UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JENNIFER MEAGHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 13-11307-JGD |
| ANDOVER SCHOOL COMMITTEE, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF DECISION AND ORDER ON
PLAINTIFF'S MOTION REGARDING ISSUE PRECLUSION**

June 4, 2014

DEIN, U.S.M.J.

## I. INTRODUCTION

This case arises out of the September 2012 termination of the plaintiff, Jennifer Meagher ("Meagher"), from her employment as a tenured teacher at Andover High School ("AHS"). During the time period leading up to the plaintiff's termination, Meagher and other members of the teachers' union, the Andover Education Association ("AEA" or "Union"), were involved in contentious negotiations with the Andover School Committee over a new collective bargaining agreement. In addition, AHS was engaged in the process of seeking re-accreditation pursuant to the standards established by the New England Association of Schools and Colleges ("NEASC"), the accrediting body for public schools in Massachusetts. The accreditation process centered on a self-study,

which required teachers and administrators at AHS to conduct evaluations of the school's programs, prepare separate reports addressing one of seven accreditation standards, and present the reports to the faculty for approval. Under the NEASC guidelines, each report required approval by a two-thirds majority vote of the faculty. It is undisputed that Meagher was discharged from employment, effective September 17, 2012, because she sent an email to approximately sixty other members of the AEA in which she urged them to enter an "abstain" vote on the ballots for each of the self-study reports as a means of putting the accreditation process on hold and using it to gain leverage in the collective bargaining negotiations. In this action, Meagher alleges that the decision to terminate her for writing and distributing the email to her colleagues constituted unlawful retaliation for, and otherwise interfered with, the exercise of her First Amendment right to engage in free speech. By her complaint, she has asserted claims against the Andover School Committee, the Andover School Department and the Superintendent of the Andover Public Schools, Marinel McGrath ("McGrath"), for violations of her rights under 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H and 11I.

On October 10, 2012, less than a month after Meagher was discharged from her teaching position at AHS, the AEA filed an unfair labor practice charge with the Department of Labor Relations, alleging that the Andover School Committee had violated

Mass. Gen. Laws ch. 150E, § 10(a)(3) and derivatively § 10(a)(1),[1] by terminating Meagher for engaging in concerted activity. The School Committee denied the charges, and asserted that Meagher's email had advocated an unlawful withholding of essential services, in violation of Mass. Gen. Laws ch. 150E, § 9A.[2] On July 2, 2013, following a two-day hearing, the Commonwealth Employment Relations Board ("Board") issued a 52-page Decision in which it found that "Meagher was not engaged in conduct prohibited by Section 9A and that her termination for engaging in concerted protected activity therefore violated Sections 10(a)(3) and, derivatively, 10(a)(1) of [Chapter 150E]." (Pl. Ex. 2 at 2).[3] Accordingly, the Board held that the Andover School Committee had engaged in an unfair labor practice, in violation of Massachusetts law, by discriminating against Meagher on the basis of her union activity, and it ordered, among other things, that the Committee

---

[1] Mass. Gen. Laws ch. 150E "protects the rights of public employees ... to self-organize and to bargain collectively." Mass. State Police Commissioned Officers Ass'n v. Commonwealth, 462 Mass. 219, 224, 967 N.E. 2d 626, 631 (2012) (emphasis omitted). Section 10(a)(3) provides that "[i]t shall be a prohibited practice for a public employer or its designated representative to ... (3) Discriminate in regard to hiring, tenure, or any term or condition of employment to encourage or discourage membership in any employee organization[.]" Mass. Gen. Laws ch. 150E, § 10(a)(3). Section 10(a)(1) prohibits public employers from interfering, restraining, or coercing "any employee in the exercise of any right guaranteed under [Chapter 150E.]" Mass. Gen. Laws ch. 150E, § 10(a)(1).

[2] Mass. Gen. Laws ch. 150E, § 9A provides in relevant part that "no public employee ... shall induce, encourage or condone any strike, work stoppage, slowdown or withholding of services by such public employees."

[3] The plaintiff's exhibits ("Pl. Ex. __") are attached to her Memorandum of Law in Support of Plaintiff's Motion to Determine That the Issue Determinations and Factual Findings of the Employment Relations Board in the Matter of Her Termination are Binding on the Parties in This Action (Docket No. 50-1).

immediately reinstate Meagher to her teaching position at AHS and compensate her for all the losses she suffered as a result of the Committee's unlawful conduct. (Id. at 51). The School Committee did not pursue judicial review of the Board's Decision although it had an opportunity to do so. (See id. at 52; Pl. Mem. (Docket No. 50-1) at 11).

The matter is presently before the court on the plaintiff's "Motion to Determine That the Issue Determinations and Factual Findings of the Employment Relations Board in the Matter of the Termination of Jennifer Meagher are Binding on the Parties in This Action" (Docket No. 50). By her motion, Meagher is seeking an order precluding the defendants from re-litigating in this action any factual or legal issue that was decided by the Board in its 52-page Decision. For all the reasons described below, this court finds that the plaintiff's motion is overly broad, and that she has failed to demonstrate that the requirements for issue preclusion have been satisfied such that the defendants should be precluded from revisiting any of the numerous facts and issues that the Board addressed in its written Decision. Therefore, the plaintiff's motion for a ruling that the Board's Decision is binding on the parties in this case is DENIED. However, the denial shall be WITHOUT PREJUDICE to renewal if the plaintiff is able to show at a later time in the litigation that specific facts or issues, which were determined by the Board in the prior adjudication, satisfy the elements necessary for issue preclusion to apply.

## II. DISCUSSION

"By federal statute, 'judicial proceedings of any court of any ... State, Territory or Possession ... shall have the same full faith and credit in every court within the United

States ... as they have by law or usage in the courts of such State, Territory or Possession.'" Cruz v. Melecio, 204 F.3d 14, 18 (1st Cir. 2000) (quoting 28 U.S.C. § 1738). Consequently, federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." Id. (quoting Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982)). In addition, the Supreme Court has held that "when a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Univ. of Tennessee v. Elliott, 478 U.S. 788, 799, 106 S. Ct. 3220, 3226 (1986) (quotations, citation and footnote omitted). Therefore, this court must look to Massachusetts law to determine the preclusive effect of the Board's Decision on the matters at issue in this case.

**Massachusetts Law of Issue Preclusion**

Under Massachusetts law, collateral estoppel, or "issue preclusion[,] 'prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies.'" Kobrin v. Bd. of Registration in Med., 444 Mass. 837, 843, 832 N.E. 2d 628, 634 (2005) (quoting Heacock v. Heacock, 402 Mass. 21, 23 n.2, 520 N.E. 2d 151 (1988)). In order for issue preclusion to apply,

5

> a court must determine that (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication.

Id. (quoting Tuper v. North Adams Ambulance Serv., Inc., 428 Mass. 132, 134, 697 N.E. 2d 983 (1998)). "Additionally, the issue decided in the prior adjudication must have been essential to the earlier judgment." Id. at 844, 832 N.E. 2d at 634 (quoting Tuper, 428 Mass. at 134-35, 697 N.E. 2d 983). If the party claiming preclusion establishes that each of these elements has been met, "a final order of an administrative agency in an adjudicatory proceeding [will] preclude[ ] relitigation of the same issues between the same parties, just as would a final judgment of a court of competent jurisdiction." Id. (quotations, alteration and citations omitted). Because Meagher has not demonstrated that all of the necessary elements have been met in this case, her motion must be denied.

### **Existence of a Final Judgment on the Merits**

With respect to the first element of the test for issue preclusion, there can be no serious question that this element has been satisfied. It is undisputed that following two days of hearings, the Board issued a lengthy written decision on the AEA's unfair labor practice charge, which addressed both the Union's allegations that the School Committee had violated Massachusetts law by discriminating against Meagher on the basis of protected union activity, and the School Committee's assertion that Meagher had acted unlawfully by advocating the withholding of essential public employee services. Although the School Committee had an opportunity to seek judicial review of the Board's Decision,

6

there is no dispute that it chose not to do so. (See Pl. Ex. 2 at 52; Pl. Mem. at 11). Therefore, the record demonstrates that there was a final judgment on the merits in the earlier proceedings.

**<u>Identity of Parties</u>**

The second element of the test for issue preclusion requires a showing that the defendants in this action were the same as, or in privity with, the parties in the administrative action. While there is no dispute that the Andover School Committee has been named as a party in both actions, neither the Andover School Department nor Superintendent McGrath were parties to the earlier dispute. "A nonparty to a prior adjudication can be bound by it only where [the nonparty's] interest was represented by a party to the prior litigation." TLT Constr. Corp. v. A. Anthony Tappe & Assocs., Inc., 48 Mass. App. Ct. 1, 5, 716 N.E.2d 1044, 1050 (1999) (alteration in original; quotations and citations omitted). Even assuming the School Department's interests were adequately represented by the School Committee in the proceedings before the Board, Meagher has not established that Superintendent McGrath was in privity with the School Committee and that the Board's Decision should be binding on her.

In the instant action, Meagher has sued McGrath only in her personal capacity and not in her official capacity as a representative of the School Committee or the School Department. (See 2d Am. Compl. (Docket No. 31) ¶ 5). This distinction is significant. "[A] public official, sued only in [her] official capacity, is a proxy for the government entity that employs him and is in privity with that entity." Goldstein v. Galvin, 719 F.3d

7

16, 23 (1st Cir. 2013). "The situation is quite different when an official is sued in [her] individual capacity. By definition, such a suit takes aim at the individual, not the government entity with which [s]he is associated. Such a defendant is, therefore, not considered to be in privity with the government entity." Id. Thus, the fact that McGrath served as the Superintendent of the Andover Public Schools throughout the relevant time period is not sufficient to warrant the conclusion that she was in privity with the School Committee for purposes of issue preclusion. See Leung v. Lui, 54 Mass. App. Ct. 1104, at *2 (2002) (unpub. op.) (finding that defendants had not established, as a matter of law, that "a person in his individual capacity is in privity with a corporation [even] if he is also president of that corporation").

The plaintiff argues that privity exists because the School Committee was defending the actions of both the School Department and Superintendent McGrath in connection with the proceedings before the Board. She further points out that McGrath was the designated representative of the School Committee for purposes of the administrative proceedings. (Pl. Mem. at 9-10). The record confirms that it was McGrath who dismissed Meagher from her position as a teacher at AHS, and that the School Committee was defending that decision against the unfair labor practice charge. (See Pl. Ex. 2 at 1-2; Pl. Ex. 5 at 3-6). It also shows that McGrath appeared as a representative of the School Committee during the hearing before the Board. (See Pl. Ex. 3 at 10). Nevertheless, Meagher has not shown that the School Committee was protecting McGrath's personal interests at any time during the administrative proceedings or that

8

McGrath had an opportunity to participate in those proceedings in order to defend herself individually.  Ultimately, the determination whether issue preclusion applies "is conditioned on 'whether [the] defendant[ ] received a full and fair opportunity to litigate [her] claims' in the first proceeding."  Enica v. Principi, 544 F.3d 328, 337 (1st Cir. 2008) (quoting Acevedo-Garcia v. Vera-Monroig, 351 F.3d 547, 575 (1st Cir. 2003)).  Because McGrath was not a party to the administrative proceedings, and therefore had no opportunity to cross-examine the witnesses or otherwise defend the charges on her own behalf, Meagher has not shown that McGrath should be foreclosed from re-litigating any of the numerous facts and issues addressed in the Board's Decision.

## Identity of Issues

Even if it were assumed that Meagher had shown that all of the defendants were parties or in privity with the parties to the prior action, her motion would falter on the third element of the test for issue preclusion.  "It is common ground that the reach of collateral estoppel 'must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding.'"  Faigin v. Kelly, 184 F.3d 67, 78 (1st Cir. 1999) (quoting C.I.R. v. Sunnen, 333 U.S. 591, 599-600, 68 S. Ct. 715, 92 L. Ed. 898 (1948)).[4]  As described above, the issues addressed and resolved by

---

[4] The First Circuit has explained that its "cases apply the same traditional preclusion principles that would control in a Massachusetts court" and that its 'previous pronouncements in this area of the law are persuasive" even where Massachusetts law controls.  Keystone Shipping Co. v. New England Power Co., 109 F.3d 46, 51 (1st Cir. 1997).  Thus, although the First Circuit in Faigin was applying the federal common law of issue preclusion rather than Massachusetts law, the Court's analysis in that case is applicable here.

9

the Board were whether the Andover School Committee unlawfully terminated Meagher, in violation of Section 10(a)(3) and, derivatively, Section 10(a)(1) of Mass. Gen. Laws ch. 150E, for engaging in protected union activity, and whether Meagher violated Section 9A of that statute by unlawfully advocating the withholding of essential work obligations. (See Pl. Ex. 2 at 1-2). The Board did not address the First Amendment claims that are at issue in the present case, and did not even acknowledge the constitutional concerns which are the focus of the instant lawsuit. "If the issue was never decided, it cannot have a preclusive effect." Wade v. Brady, 460 F. Supp. 2d 226, 241 (D. Mass. 2006). Because the First Amendment issues "[were] so clearly outside the scope of [the Board's] decision, it would make little sense to say that this legal issue was ever actually 'decided'" in the prior adjudication. Id. at 242. Accordingly, the plaintiff cannot establish that the Board's Decision should have a preclusive effect in this action. See Kobrin, 444 Mass. at 844, 832 N.E. 2d at 634-35 (finding that issue preclusion could not apply, even though there had been a decision on the merits in the earlier proceedings and the parties in both actions were identical, because the two actions involved different charges against the petitioner and the issues in the later matter could not have been litigated earlier); Tuper, 428 Mass. at 135-36 (refusing to apply collateral estoppel where "[t]he issues in the two adjudications were not identical").

The plaintiff argues that the issues in the present litigation are "virtually identical" to the issues before the Board because both actions concern whether the defendants' reason for terminating Meagher's employment were legally justified, and whether

10

Meagher's authorship and dissemination of the email to other teachers was a legally protected activity. (Pl. Mem. at 10). This argument is not sufficient to support the application of issue preclusion. "[T]he mere presence of a modicum of factual commonality does not establish the requisite identity of the issues for purposes of collateral estoppel. Rather, the issues must be defined by reference to the judicial determinations at stake." Faigin, 184 F.3d at 78 (internal citation omitted). The issues in the instant case concern whether Meagher's email constituted protected speech under the First Amendment to the Constitution, and whether the defendants' actions in discharging her from employment violated her constitutional rights. Thus, they are not identical to the question whether the dissemination of the email constituted union activity, or the question whether the email advocated the unlawful withholding of essential services, under Massachusetts statutory law. See Tuper, 428 Mass. at 135-36, 697 N.E. 2d at 986 (refusing to preclude re-litigation of prior determination that plaintiff had not been insubordinate where prior determination was based on fact that plaintiff "did not know (and was entitled to know) that the defendant would interpret his actions as constituting insubordination and disobedience" and present dispute required determination as to whether defendant had just cause to terminate plaintiff's employment "on the basis of the objective reasonableness of the defendant's state of mind").

As part of her Reply Memorandum, Meagher submitted an Exhibit listing some of the Board's factual findings in order "to give the Court a sense of what relief Plaintiff's Motion seeks." (Pl. Reply Mem. (Docket No. 59) at 3). However, she has failed to

11

establish that those facts are identical to the facts at issue in this case. For example, but without limitation, the Exhibit lists the following facts relating to whether Meagher's email was advocating the withholding of essential services by urging her colleagues to vote "abstain" on the ballots for the NEASC reports:

> 2. The "abstain" option was developed with Sharkey's knowledge and approval and as a direct result of the administration's informing the Union that it would view an outright refusal to vote or otherwise participate in the NEASC process as an unlawful work stoppage.
>
> * * *
>
> 6. None of the Defendants ever communicated to teachers or to the Union that a vote to abstain in order to "put a hold on" the NEASC was advocating that teachers vote in dereliction of this job duty. The only information conveyed to the faculty regarding the abstention vote came from Costello when, on April 9, 2012, she stood in front of a faculty-only gathering and informed them that the School Committee would view any action to stop the NEASC process as a work stoppage. Exercising the option to vote "abstain" on the reports was permitted and not an activity that would be viewed as either an unlawful work stoppage or an improper attempt to stop the NEASC process.
>
> * * *
>
> 11. Although McGrath was provided with Meagher's June 10 email on June 14, a full week before the scheduled June 21 meeting, neither McGrath no[r] Sharkey took steps to inform the faculty of the Superintendent's view prior to the June 21 meeting so as to prevent the more than sixty (60) faculty members who received Meagher's email from abstaining on grounds that McGrath considered to be an unlawful abuse of the NEASC voting process or an unlawful work stoppage. McGrath allowed Meagher to return to the classroom for the remainder of the school year and to attend and vote at the June 21 faculty meeting.

(Pl. Reply Mem. at Ex. 1). Although it is clear that these facts relate directly to the question whether Meagher violated Mass. Gen. Laws ch. 150E, § 9A, an issue that was before the Board in the prior dispute, the plaintiff has made no effort to show how that issue relates to her First Amendment claims in this case.

The defendants have indicated that they intend to defend the First Amendment claims pursuant to <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006) and its progeny. (<u>See</u> Def. Opp. Mem. (Docket No. 53) at 5). This requires an analysis as to whether Meagher was speaking pursuant to her official duties as an employee of the School Department and teacher at AHS, or as a citizen on a matter of public concern. <u>See</u> <u>Garcetti</u>, 547 U.S. at 420-21, 126 S. Ct. at 1959-60. The defendants have not indicated, at least at this stage in the litigation, that they intend to defend Meagher's claims on the grounds that she was promoting a work stoppage or withholding of essential services. Therefore, Meagher has not established that facts concerning that issue are relevant, much less identical, to the issues in this case. Moreover, even assuming some portion of the facts and issues determined by the Board are directly relevant to the plaintiff's constitutional claims, and could arguably be considered identical for purposes of issue preclusion, the plaintiff has not shown that the Decision in its entirety is identical to the matters raised in the present litigation. Therefore, she has not established that it should have a preclusive effect in this action.

## **Whether Issues Decided by the Board Were Essential**

Finally, in order to warrant the application of issue preclusion, Meagher must demonstrate that the facts and issues decided by the Board were "essential to the earlier judgment." Kobrin, 444 Mass. at 844, 832 N.E. 2d at 634. This court finds that the plaintiff has not made the requisite showing. The Board's Decision contains nearly 27 pages of factual findings and nearly 19 pages of legal analysis. (See Pl. Ex. 2). The plaintiff has made no attempt to distinguish the critical facts and issues from the remaining portions of the Decision.

At least some of the Board's findings constitute factual background that is not essential to its ultimate determination that the School Committee discriminated against Meagher on the basis of her protected union activity. For example, but without limitation, the Board's Decision includes a description of the population of AHS, including the percentage of graduates who enrolled in college in 2011, and the average annual drop-out rate at the school. (Pl. Ex. 2 at 5). It also describes Meagher's performance evaluations and provides details of her involvement in a Union awareness campaign, which took place during the spring of the 2010/2011 school year and was branded as "The Love Your Teachers Campaign." (Id. at 6, 10-11). Although these and many of the other facts described by the Board provide context for its legal analysis and ultimate conclusions, they are by no means essential, or even necessary, to the Board's final judgment. For this reason as well, Meagher has not shown that the Board's Decision should be given preclusive effect in the present case.

### III. CONCLUSION

For all the reasons detailed herein, the plaintiff's "Motion to Determine That the Issue Determinations and Factual Findings of the Employment Relations Board in the Matter of the Termination of Jennifer Meagher are Binding on the Parties in This Action" (Docket No. 50) is DENIED. However, the denial shall be WITHOUT PREJUDICE to renewal if the plaintiff is able to show at a later time in the litigation that specific facts or issues, which were determined by the Board in the prior adjudication, satisfy the elements necessary for issue preclusion to apply.

    / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge