UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JENNIFER MEAGHER,                        )
                                         )
              Plaintiff,                 )
      v.                                 )         CIVIL ACTION
                                         )         NO. 13-11307-JGD
ANDOVER SCHOOL COMMITTEE,                )
et al.,                                  )
                                         )
              Defendants.                )

# MEMORANDUM OF DECISION AND ORDER
## ON PLAINTIFF'S AMENDED MOTION TO ASSESS
## COSTS INCLUDING REASONABLE ATTORNEY'S FEES

January 6, 2016

DEIN, U.S.M.J.

## I.  INTRODUCTION

This suit, filed on May 30, 2013, arises out of the September 2012 termination of the

plaintiff, Jennifer Meagher ("Meagher"), from her employment as a tenured teacher at Andover

High School ("AHS") in Andover, Massachusetts.  It has never been disputed that the termina-

tion was based on Meagher having sent an email to approximately 60 of her colleagues urging

them to vote against certain reports required as part of the school's accreditation application.

Meagher saw this as an opportunity to advance the teachers' union's collective bargaining

goals, while the school characterized it as unlawfully encouraging a work stoppage.  Meagher

asserted claims against the Andover School Committee (the "ASC" or "Committee"), the

Andover School Department and the Superintendent of the Andover Public Schools, Marinel

McGrath ("McGrath"), for violations of her rights under 42 U.S.C. § 1983 ("Section 1983") and

the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H and 11I ("MCRA").

On July 2, 2013, while this suit was pending, the Commonwealth Employment Relations

Board ("CERB" or "Board") issued its decision in connection with an unfair labor practices

charge filed by the union, finding Meagher's termination was in response to protected

concerted activity and that her employer had discriminated against her based on her union

activity in violation of Massachusetts law.  The School Committee was ordered to reinstate

Meagher to her teaching position at AHS and to compensate Meagher for all losses she had

suffered, if any, as a result of the unlawful action.  No appeal was taken.

Meagher continued to pursue her claims against the defendants in this action.  The

fundamental issue raised by this case was the application of Garcetti v. Ceballos, 547 U.S. 410,

126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006), and whether Meagher's email was entitled to

protection under the First Amendment as a statement made as a citizen on a matter of public

concern.  Although this case presented a limited legal issue, and the facts were basically known

to the parties through the unfair labor practices proceeding, the parties were unable to effectu-

ate a streamlined presentation of the case for resolution.  Instead, an extensive motion practice

followed, with each side blaming the other for the need for court involvement.  Eventually, the

parties filed cross-motions for summary judgment as to liability only.  In a decision dated March

31, 2015, this court concluded that Meagher had been unlawfully dismissed from her employ-

ment in retaliation for protected speech, but that McGrath was immune from liability under the

doctrine of qualified immunity.  This court further held that the plaintiff had failed to establish a

triable issue with respect to her claims under the MCRA.

A trial was scheduled on the issue of damages.  Before trial, the parties settled

Meagher's claim for $100,000.00, leaving to the court the issue of reasonable attorneys' fees

and costs.  Consequently, the matter is presently before this court on "Plaintiffs' Amended

Motion to Assess Costs Including Reasonable Attorney's Fees."  (Docket No. 175-5).  By this

motion, the plaintiff's counsel is seeking $488,660.80 in fees, and $16,237.79 in costs, for a

total amount of $504,898.59.  This calculation is based in part on an hourly rate for lead

counsel, Mark Stern, of $800 per hour for approximately half of his work, and $400 per hour for

work that Mr. Stern completed, but which could have been done by attorneys with lesser

experience.  It also seeks compensation for close to 1,000 hours of attorneys' time.

In this court's view, the $800 hourly rate charged is excessive, as is the number of hours

spent on this litigation.  For the reasons detailed herein, this court awards plaintiff $167,454.18

in fees, and $16,237.79 in costs, for a total of $183,691.97.

## II.  STANDARD FOR AWARDING FEES

In accordance with the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988,

a "prevailing party" in a civil rights action "should ordinarily recover an attorney's fee unless

special circumstances would render such an award unjust."  Hensley v. Eckerhart, 461 U.S. 424,

429, 103 S. Ct. 1933, 1937, 76 L. Ed. 2d 40 (1983) (internal quotation marks and citation

omitted).  Reasonable costs also are recoverable under § 1988.  Palmigiano v. Garrahy, 707 F.2d

636, 637 (1st Cir. 1983).  It is well-recognized that

> Congress's overarching purposes in enacting § 1988 ... were "to ensure
> 'effective access to the judicial process' for persons with civil rights
> grievances," *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S. Ct. 1933, 76
> L. Ed. 2d 40 (1983) (quoting H.R.Rep. No. 94–1558, at 1 (1976)), and to
> "encourag[e] the enforcement of federal law through lawsuits filed by
> private persons," *Missouri v. Jenkins by Agyei,* 491 U.S. 274, 283 n.6, 109

S. Ct. 2463, 105 L. Ed. 2d 229 (1989) (internal quotation marks omitted).  The
award of attorney's fees serves this purpose because it corrects a defect
Congress identified in the market: "[T]he private market for legal services
failed to provide many victims of civil rights violations with effective access to
the judicial process" because "[t]hese victims ordinarily cannot afford to
purchase legal services at the rates set out by the private market" and
because the amount of damages in most civil rights suits is ordinarily too low
to otherwise cover the cost of a lawyer.  *City of Riverside v. Rivera,* 477 U.S.
561, 576-77, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986).

Diffenderfer v. Gomez-Colon, 587 F.3d 445, 455 (1st Cir. 2009).

As the First Circuit recently confirmed, "[t]he lodestar approach is the method of choice
for calculating fee awards."  Matalon v. Hynnes, 806 F.3d 627, 638 (1st Cir. 2015).  As the court
explained further:

Under this lodestar approach, a district court first "calculate[s] the number of
hours reasonably expended by the attorneys for the prevailing party, excluding
those hours that are 'excessive, redundant, or otherwise unnecessary.'"  *Cent.
Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emp'rs v. Ray
Haluch Gravel Co.,* 745 F.3d 1, 5 (1st Cir.2014) (quoting *Hensley v. Eckerhart,* 461
U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).  The court then deter-
mines "a reasonable hourly rate or rates – a determination that is often bench-
marked to the prevailing rates in the community for lawyers of like qualifica-
tions, experience, and competence."  *Id.*  Multiplying the results of these two
inquiries yields the lodestar amount.  The court may then adjust the potential
award based on factors not captured in the lodestar calculation.  *See Hensley,*
461 U.S. at 434 & n.9, 103 S. Ct. 1933; [*Coutin v. Young & Rubicam Puerto Rico,
Inc.,* 124 F.3d 331, 337 (1st Cir. 1997)].

Id.  In the instant case, there is a dispute both as to the reasonable hourly rates and the number
of hours reasonably expended.  Each will be addressed below.

### III.  CALCULATION OF REASONABLE HOURLY RATES

As detailed more fully below, this court must "find the prevailing hourly rate in Boston
for attorneys of comparable skill, experience, and reputation[.]"  Martino v. Mass. Bay Transp.
Auth., 230 F. Supp. 2d 195, 205 (D. Mass. 2002).  The burden for establishing that rate is on the

[4]

fee applicant, who is expected to support the request for an hourly rate with the attorney's

own affidavit as well as with other supporting evidence.  See Blum v. Stenson, 465 U.S. 886, 896

n.11, 104 S. Ct. 1541, 1547 n.11, 79 L. Ed. 2d 891 (1984).  Here, Mr. Stern has submitted his own

affidavit, affidavits from other attorneys, as well as citations to cases and publications he

believes are instructive.

        **A.**       **Statement of Relevant Facts**

**Counsels' Background and Experience**

Attorney Stern is a graduate of Brown University (1966) and Harvard Law School (1969).

Stern Aff. (Docket No. 169-2) ¶ 2.  He graduated *cum laude* and with honors from both institu-

tions, and has been a member of the Bar since 1970.  Id.  His practice has focused on employ-

ment law and civil rights cases, and he has handled a number of noteworthy cases.  Id. ¶¶ 3, 5.

Mr. Stern is an active member of the Bar, serving on a number of committees and Boards of

public interest groups.  Id. ¶¶ 7-9.  He has taught litigation skills for the New England School of

Law, the Advocacy Training Institute, the Massachusetts Chapter of the National Lawyers Guild,

and the Suffolk Law School Community Education Project, and has made a number of

presentations to organizations and law schools.  Id. ¶ 6.

While handling the instant litigation, Mr. Stern was in solo private practice.  For most of

the relevant time, he had one associate, and at times a paralegal assistant and/or law student

intern.  Id. ¶ 4.  Mr. Stern has submitted eight affidavits from attorneys attesting to his "reputa-

tion, both nationally and locally, in the legal community, for [his] work on behalf of working

people in the areas of labor and union rights and civil rights, and/or [his] skills and knowledge."

Id. ¶ 11.  This court does not doubt his commitment to his clients, their causes, and to the practice of law.

Mr. Stern has applied for a rate of $800 per hour for approximately half of his work.  Id. ¶ 59.  He also has applied for a rate of $400 per hour for work that he performed but which "could have been done by an attorney less experienced than myself, but more experienced than my first-year associate."  Id. ¶ 64.  Mr. Stern seeks the rate of $200 per hour for Attorney Alice Lee, who worked in his office "while a second and third year law student at New England Law Boston, and subsequently as a graduate from law school and member of the bar."  Id. ¶ 66. Finally, he uses the rate of $80 per hour for the paralegal services he and Ms. Lee performed, as well as paralegal work done by Laura Rixham and Erica Ring.  Id. ¶¶ 69-72.

## Plaintiff's Evidence of Comparable Hourly Rates

It is Mr. Stern's contention that he is entitled to be compensated at the rate of senior partners in large law firms doing "difficult and/or complex litigation, such as antitrust cases." See Pl. Mem. for Fees (Docket No 169-1) at 11 (citing Blum, 465 U.S. at 893, 104 S. Ct. at 1546 ("It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases . . . .")).[1]  In support of his requested hourly rate, Mr. Stern has filed an affidavit, in which he attests as follows:

---

[1]  As detailed below, this court understands that while the same standards apply, the appropriate hourly rates in civil rights cases do not need to be equal to those awarded in antitrust cases.  Rather, among the criteria applied in awarding fees in either type of case is the prevailing rate "for similar services" by lawyers with "comparable skill, experience and reputation."  Blum, 465 U.S. at 896 n.11, 104 S. Ct. at 1547 n.11.  The type of litigation is an appropriate consideration.

> The 2013 National Law Journal Billing Survey shows that the rate I seek ($800 per hour for less than half of my time) falls below the average ($835 per hour) of the billing rates for senior partners in the following surveyed Boston firms in 2013 (two years ago):
>
> A.      Nutter McClennan & Fish: $715;
> B.      Edwards Wildman Palmer: $765; and
> C.      Foley Hoag: $775
> D.      Nixon Peabody: $850;
> E.      Bingham McCutchen: $1,080

Stern Aff. ¶ 62.[2]  Mr. Stern also points to a decision by Judge Gertner awarding $650 per hour to a lead counsel in a wage and hour class action case, which was settled after conditional class certification was granted.  Id. ¶ 63 (citing Davis v. Footbridge Eng'g Servs., LLC, Civil Action No. 09-11133-NG).  According to Mr. Stern, this counsel had similar credentials to his, and did similar types of work.  Id.

In support of his hourly rate, Mr. Stern also submitted the Affidavit of Thomas G. Shapiro, a partner in Shapiro Haber & Urmy LLP, and a classmate of Mr. Stern.  Shapiro Aff. (Docket No. 169-12) ¶¶ 1-3.  Mr. Shapiro's firm represents plaintiffs in class actions.  Id. ¶ 1. The hourly rate for senior partners in his firm is $850 per hour, rates for junior partners and associates range from $300 to $750 per hour, and the paralegal rate is $210 per hour.  Id. ¶ 8. Mr. Shapiro cites to the approval of his rate by Judge Young in a multi-district class action lawsuit alleging defectively designed engines in certain Audi and Volkswagen automobiles.  Id. ¶ 9 (citing In Re: Volkswagen & Audi Warranty Extension Litig., Civil Action No. 07-md-01790-WGY (Memorandum and Order dated 2/10/15 (Docket No. 430)).  The rate does not appear to

---

[2]  This court notes that Bingham McCutchen has gone out of business, and that the requested $800 rate is higher than three out of the four remaining firms.

have been challenged in that multi-million dollar litigation, where Shapiro, Haber & Urmy was awarded $153,759.42 for its work, out of more than $16 million in fees.  (<u>See</u> C.A. No. 07-md-01790-WGY, Docket No. 430 at 64-65, 85-86).

Mr. Stern has also submitted the Affidavit of Barry C. Klickstein, a graduate of the University of Pennsylvania Law School who has been a member of the Massachusetts Bar since 1975.  <u>Klickstein Aff.</u> (Docket No. 169-8) ¶ 2.  He is a partner in the law firm of Day Pitney LLP in Boston, Massachusetts, and describes his practice as being "limited to civil litigation."  <u>Id.</u> ¶ 1.  He has not provided any further details.  According to Mr. Klickstein, "[t]he hourly rate for senior trial partners in my firm ranges from $615 to $770 per hour.  Rates for other partners and associates range from $335-$600.  Our paralegal rate ranges from $200-$310 per hour."  <u>Id.</u> ¶ 5.

While Mr. Stern submitted additional affidavits from counsel attesting to the significance of the issues raised in cases such as the instant one, and their opinion as to the high quality of Mr. Stern's work, these affidavits do not contain any information about the hourly rates charged.  In particular, this court notes that Mr. Stern submitted the affidavit of Attorney Judith E. Somberg who has been practicing law since 1977, and is a solo practitioner in Cambridge representing, among others, individuals in employment and housing discrimination cases. Ms. Somberg has also served as co-counsel with Mr. Stern on various matters.  <u>Somberg Aff.</u> (Docket No. 169-13) ¶¶ 1-3, 5.  While seemingly engaged in a similar practice to Mr. Stern, Ms. Somberg does not provide any information about the rates she charges in such matters.

Mr. Stern also points the court to several other decisions.  In his Reply Memorandum, Mr. Stern calls the court's attention to the case of <u>Travers v. Flight Servs. & Sys., Inc.,</u> Civil

Action No. 11-10175-RGS, where the court awarded counsel $600 per hour in connection with a

claim of retaliation, and to <u>Merigan v. Liberty Life Assurance Co.</u>, 839 F. Supp. 2d 445, 447 (D.

Mass. 2012), where counsel was awarded $485 per hour in 2012 in an ERISA case.  <u>See</u> <u>Pl. Reply</u>

<u>Mem.</u> (Docket No. 175) at 11.[3]

After completion of the briefing of the motion for fees, Mr. Stern filed an unopposed

"Motion to Bring Additional Precedent to the Attention of the Court."  (Docket No. 176).[4]

Therein, Mr. Stern attached Judge Gertner's Memorandum and Order Re: Attorney's Fees,

issued on June 8, 2009, in the case of <u>Tuli v. Brigham & Women's Hosp., Inc.</u>, Civil Action No. 07-

12338-NG.  This was a hostile work environment, retaliation case which resulted in a verdict for

the plaintiff in excess of $1.6 million.  Therein, Judge Gertner found the requested rates for

partners in the law firm of Brown Rudnick, ranging from $570-735, to be comparable to rates

charged by other "large law firms."  (Docket No. 176-1 at 3-4).  As Judge Gertner noted, "[a]s

the legislative history to § 1988 suggests, the purpose of fixing a reasonable hourly rate is to

arrive at amounts that are 'adequate to attract competent counsel, but which do not produce

windfalls to attorneys.'"  (<u>Id.</u> at 4 (citing S. Rep. No. 94-1011, at 6 (1976))).[5]

---

[3]  This court notes that in <u>Travers</u> the court noted that the rate was a high one (<u>see</u> C.A. No. 11-10175-RGS, Docket No. 202 at 6 n.3), and in <u>Merigan</u> there was no objection to the rate.  <u>Merigan</u>, 839 F. Supp. 2d at 447.

[4]  As detailed <u>infra</u>, this court finds that the piecemeal presentation of information to the court has increased the time involved in this case unnecessarily.

[5]  After argument on the motion for fees, Mr. Stern filed another "Motion to Submit Additional Materials to the Court" (Docket No. 179), which the defendants opposed.  By this motion, Mr. Stern requests leave to submit a decision of the Massachusetts Superior Court in the case of <u>Lopez v. Superior Nut Co.</u>, No. 025299, 2006 WL 1745803 (June 12, 2006), and a 2013 article from Lawyers Weekly reporting on a "rate report" allegedly compiled by a legal analytics company which analyzed "$9.5 billion worth of actual invoices submitted to 83 corporate clients" by various large law firms nationwide.  The

## Defendants' Evidence Regarding Comparable Hourly Rates

The defendants contend that the appropriate hourly rate for Mr. Stern is between $200 and $250 per hour.  Defs. Mem. (Docket No. 174) at 5.  In support of this position, defendants cite to the fact that Howard Friedman, a well-known, highly-credentialed civil rights litigator, commanded an hourly rate of $240 in or around 1999.  See Parker v. Town of Swansea, 310 F. Supp. 2d 376, 389 (D. Mass. 2004).  They also cite to other cases finding the rate of $350 per hour warranted for senior litigators with greater credentials (in their view) than Mr. Stern.  Def. Mem. at 5-6 (citing N. Sec. Ins. Co. v. R.H. Realty Tr., 25 Mass. L. Rep. 185 (2009); Tri-City Cmty. Action Program, Inc. v. City of Malden, 680 F. Supp. 2d 306 (2010)).  Defendants also point out that Messrs. Klickstein and Shapiro practice in legal areas and firms markedly different from Mr. Stern.  Not only do they come from large firms, but, in publicly available information, Mr. Klickstein also holds himself out as specializing in "complex business and commercial disputes and products and professional liability defense" and Mr. Shapiro specializes in large, class action litigation.  See Defs. Mem. at 4-5 & n.2.

In their opposition, the defendants also attach requests for attorneys' fees submitted by Mr. Stern in other cases in this court.  In 2004 and in 2006, Mr. Stern requested compensation at the rate of $450 per hour, also supported by the affidavits of Attorneys Shapiro and Klickstein.  See Anzola v. Balmaseda, Civil Action No. 08-11252-RGS (Mr. Stern awarded $450 per hour for a default judgment, no opposition having been filed to the request); Fulton v.

---

motion to submit this additional material is DENIED.  Not only is the motion untimely, and the information being offered outdated, but it also bears no particular relevance to the matter before the court.  There are endless publications and cases which analyze and/or describe rates charged in various matters.  There is no reason for this court to rely on these additional materials in particular.

Town of Hull, Civil Action No. 04-11234-MEL (Docket Nos. 45-2, 59) (court awards $9,500 against a request of $41,601.86 finding "[t]he substantial fees incurred in this case were not warranted given the simplicity of the case and the possibility of settlement from the beginning stages."  Court does not specify hourly rate awarded, although Mr. Stern had requested $450 per hour).  Mr. Stern contends that these fee applications are inapplicable since they were filed several years ago and were filed in much simpler cases.  See Pl. Reply Mem. (Docket No. 175) at 11.

> **B.**   **Analysis**

As a general statement, a district court "is not bound by the hourly rate requested by the victor's counsel."  Bogan v. City of Boston, 489 F.3d 417, 429 (1st Cir. 2007) (quoting Phetosomphone v. Allison Reed Group, Inc., 984 F.2d 4, 8 (1st Cir. 1993)).  "Reasonable hourly rates will vary depending on the nature of the work, the locality in which it is performed, the qualifications of the lawyers, and other criteria."  U.S. v. One Star Class Sloop Sailboat, 546 F.3d 26, 38 (1st Cir. 2008).  In determining the applicable hourly rate, the court is to look to "the prevailing market rates in the relevant community."  Id. at 40 (quoting Blum, 465 U.S. at 895, 104 S. Ct. at 1547).  Relevant considerations include, but are not limited to "the qualifications, experience, and specialized competence of the attorneys involved."  Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001).  See also Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950-51 (1st Cir. 1984) (in setting rate the court should consider "the type of work performed, who performed it, the expertise that it required, and when it was undertaken.").

"[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the

community *for similar services* by lawyers of reasonably comparable skill, experience and reputation." <u>Blum</u>, 465 U.S. at 896 n.11, 104 S. Ct. at 1547 n.11 (emphasis added).  Thus, contrary to Mr. Stern's argument, this court finds that the type of litigation at issue is relevant to this court's establishment of a reasonable hourly rate.  The fact "that some senior attorneys at large corporate law firms in Boston charge rates equal to or greater than" the amount being sought, is not controlling.  <u>Guckenberger v. Boston Univ.</u>, 8 F. Supp. 2d 91, 105 (D. Mass. 1998). The plaintiff "must not show merely that higher rates exist in the market," but also that the rate charged is for "*similar services* by lawyers of reasonably comparable skill, experience and reputation." <u>Id.</u> (quoting <u>Blum</u>, 465 U.S. at 896 n.11, 104 S. Ct. at 1547 n.11).  <u>See</u> <u>also</u>, <u>E.E.O.C. v. AutoZone, Inc.</u>, 934 F. Supp. 2d 342, 356-58 (D. Mass. 2013) ("rates typically charged by large-firm, commercial litigators" were not applicable to services provided in employment discrimination case: court rejects rate of $425 per hour and reduces it to $350 per hour for litigator with 30 years of experience), and cases cited; <u>Parker v. Town of Swansea</u>, 310 F. Supp. 2d at 389-90 (rejecting argument that hourly rates charged by partners in large Boston law firms were comparable to straightforward civil rights case), and cases cited.

This court finds that the $800 per hour rate Mr. Stern is seeking is excessive.  Except for Mr. Shapiro's rate, the rate is higher than virtually all other rates described in the supporting material submitted by either party.  This court's own research has failed to find support for the $800 per hour rate in cases even remotely similar to the instant litigation.  This court recognizes that the rates charged will vary from practitioner to practitioner, and even from case to case by a single practitioner.  Nevertheless, in reviewing the available material, this court finds that

[12]

$450 per hour for Mr. Stern's work as a senior partner, and not $800 per hour, is consistent

with the applicable prevailing rate in Boston.

Although not controlling, this court finds some recent cases instructive.  For example, in

Matalon v. Hynnes, the plaintiff prevailed after a four-day jury trial on claims of violation of civil

rights due to an unreasonable search and the police's use of excessive force.  806 F.3d at 632.

He also defeated the defenses of qualified immunity and "the seldom-used exception to the

Fourth Amendment's warrant requirement for warrantless searches by police officers

exercising community caretaking functions." Id. at 631.  The First Circuit upheld the District

Court's award of attorneys' fees and costs.  Id. at 640.

In assessing fees and costs, the District Judge had reduced lead counsel's requested rate

from $500 to $400 per hour, and awarded a total of $134,642.35.  Matalon v. O'Neill, No. 13-

10001-LTS, 2015 WL 1206343, at *2 (D. Mass. Mar. 17, 2015).  From public records, it appears

that lead counsel in that case, Robert Sinsheimer, has been practicing law since 1979.  He

appears regularly in federal court and is an able and experienced litigator in the field of civil

rights.  The District Judge also allowed the rate of $315 for Lauren Thomas, who, according to

public records, has been practicing law since 2007, and $90 per hour for paralegal work.  See id.

at *1, 2.  (See also C.A. No. 13-10001-LTS, Docket No. 151).

This court also finds the recent case of Shea v. Porter, No. 08-12148-FDS, 2015 WL

6126806 (D. Mass. Oct. 16, 2015), to be instructive.  That case involved a claim of wrongful

arrest and excessive force.  The first trial resulted in a defense verdict on those claims.  The trial

judge then allowed a motion for a new trial, and a second jury trial resulted in a plaintiff's

verdict on the unlawful arrest claim and an award of $300,000.00 in damages.  Plaintiff also

changed counsel several times during the course of the litigation.  The court rejected proposed rates of $500 and $550 per hour for counsel with experience which appears comparable to that of Mr. Stern.  See, e.g., id. at *6 (describing plaintiff's counsel, George Gormley, as "an experienced and well-respected attorney who has practiced in the federal court in Boston for many years").  Instead, the District Judge awarded $375 per hour for each of three successor lead trial counsel.  Id. at *8-10.  He also awarded $175 per hour for experienced associates who second-seated at trial.  Id. at *9-11.  The final award of hours, after two trials, was 1,341.9, with fees totaling $366,577.96.  Id. at *12.

On March 5, 2015, Judge Young issued a decision in Carpaneda v. Domino's Pizza, Inc., 89 F. Supp. 3d 219 (D. Mass. 2015), a case claiming violations of the minimum wage and tip laws.  After surveying other awards, the court awarded $425 per hour to lead counsel with 20 years of experience in employment litigation, and $275 per hour to his fifth year associate.  Id. at 228-29, and cases cited.  See also Roggio v. Grasmuck, 18 F. Supp. 3d 49, 58 (D. Mass. 2014) (in a case alleging violations of the Massachusetts Criminal Offender Record Information statute, court allows the rate of $400 for a trial attorney with 35 years of experience, $250 and $290 per hour for associates with approximately 7 years of experience, and $190 per hour for a skilled paralegal).  Finally, this court has considered its May 6, 2014 decision on a request for attorney's fees in the case of Barbosa v. Hyland, Civil Action No. 11-11997-JGD.  That case involved claims of unlawful warrantless entry into a home, unlawful arrest and excessive force.  Lead counsel, with 33 years of experience in civil rights litigation, was awarded $425 per hour, his associate with over 10 years of experience was awarded $310 per hour and a part-time associate, also with more than 10 years of experience, was awarded $250 per hour.  (C.A. No.

[14]

11-11997-JGD, Docket No. 135 at 5-7).  The total award after a four day trial was $165,701.75 in fees plus $3,662.81 in costs.  (Id. at 16-17).

There are undoubtedly a number of other decisions which this court could consider, but no one has cited any cases which would support an hourly rate of $800.  Rather, the prevailing rate for experienced lead counsel in straightforward civil rights cases such as the one before this court is in the range of $400 per hour.  Given the fact that Mr. Stern previously has been awarded $450 per hour, albeit without discussion, and considering his extensive credentials, this court will award him compensation at the rate of $450 per hour for his senior partner work.

The next question which arises is the appropriate rate to be charged for the work Mr. Stern performed which he characterizes as being more appropriately done by an associate.  The court is left to decide what the rate should be for a hypothetical associate.  Mr. Stern proposed a rate of half of his senior partner rate, but such a reduction seems too great.  Considering the rates awarded to experienced associates who assisted lead counsel with experience compa-rable to Mr. Stern's, this court will allow the rate of $300 per hour for Mr. Stern's "associate level" work.

Mr. Stern is also seeking compensation for Ms. Lee, who worked for him as a law student and then a recent graduate, at the rate of $200 per hour.  This court assumes that the work done at the $200 per hour rate occurred after Ms. Lee graduated law school, but even so that rate is high compared with the hourly rates awarded to associates with much more experience, as described above.  This court will allow $175 per hour for Ms. Lee's time.

Finally, Mr. Stern has requested a rate of $80 per hour for paralegal work.  There is no objection to this rate and it is consistent with the other information before the court.  Accordingly, this court will allow that request.

Thus, prior to an adjustment in compensable hours, the fees requested, based on the hours asserted (see Docket No. 175-5), are as follows:

| | | |
|---|---|---|
| Mark Stern as lead counsel | 374.35 hours x $450 | $168,457.50 |
| Mark Stern as associate | 394.60 hours x $300 | $118,380.00 |
| Alice Lee as associate | 148.85 hours x $175 | $ 26,048.75 |
| Paralegal work | 62.62 hours x $ 80 | $   5,009.60 |
| | | $317,895.85 |

## IV.  CALCULATION OF COMPENSABLE HOURS

In undertaking a lodestar analysis, the court must subtract duplicative, unproductive or excessive hours.  Gay Officers Action League, 247 F.3d at 295.  Thus, in submitting a fee request, counsel must exercise "billing judgment," that is counsel must "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]"  Hensley, 461 U.S. at 434, 103 S. Ct. at 1939-40.  Moreover, it is "the court's prerogative (indeed, its duty) to winnow out excessive hours, time spent tilting at windmills, and the like."  Gay Officers Action League, 247 F.3d at 296.  Since the "determination of the extent of a reasonable fee necessarily involves a series of judgment calls," the trial court has "extremely broad" discretion in setting a fee award.  Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992), and cases cited.  While the court need not "set forth hour-by-hour analyses of fee requests," at a "bare minimum," the "trial court's fee determination must expose [its] thought process and show the method and manner underlying its decisional calculus," especially when "the fee award departs substantially from the contours shaped by the application."  Alfonso v.

Aufiero, 66 F. Supp. 2d 183, 192 (D. Mass. 1999) (internal citations and quotation marks omitted).

In the instant case, Mr. Stern has attempted to eliminate time which he believes is not appropriately charged in this matter, and that effort is appreciated.  Nevertheless, the remaining time greatly exceeds that which should have been reasonably expended on this litigation.  See id. ("the presiding judge must draw on her own experience and wisdom in deciding whether the time spent on each phase was in excess of a reasonable amount." (internal punctuation and citation omitted)).  As detailed above, even using rates found appropriate by this court, there are in excess of $300,000.00 in fees in a case which involved a limited factual dispute and where the facts had been developed (even if not agreed upon) previously in connection with the union action.  Moreover, while Garcetti may involve a difficult application of legal principles to any given factual scenario, it involves a limited area of the law. Finally, the case was decided on summary judgment, but the fees sought greatly exceed those that have been awarded in other cases, even after trial.

Although the court and the parties undoubtedly profess to having done everything possible to have the matter resolved in an expeditious fashion, that goal was not achieved here. In retrospect, a major part of the problem seems to have been the parties' different approach to the litigation in general.  The defendants felt from the outset that the critical issue was the application of Garcetti to the general factual scenarios presented, with the details of the facts being irrelevant and costly to amass.  The plaintiff, on the other hand, denied that Garcetti was controlling, at least initially, and focused on the minute details of the factual record throughout the litigation.  In this court's view, this over-attention to detail on the part of the plaintiff

[17]

greatly increased the cost of this litigation unnecessarily.  It is not that the work reflected on the time sheets was not done, it is just that much of the work (and the disputes it engendered) did not move the case forward in any significant respect.  The defendants should not have to compensate the plaintiff for this excessive work.

Before addressing the time charges in detail, this court needs to address Mr. Stern's argument that he tried to settle this case early on, and that the fault for failure to do so lies with the defendants.  For their part, the defendants argue that the refusal to resolve the matter lies with the plaintiff, and they dispute the plaintiff's representations as to what occurred.  The defendants' position, not surprisingly, resulted in a number of subsequent filings on the part of Mr. Stern purporting to refute the defendants' version of events.  See Pl. Reply Mem. (Docket No. 175) at 16-17; Meagher Aff. (Docket No. 175-2) ¶ 11; Supp. Stern Aff. (Docket No. 175-3) ¶ 1.  Suffice it to say, these initial settlement discussions apparently suffered the same problem as the rest of this litigation — the parties were talking at cross-purposes and for every point there was a counter-point.  This court does not find that blame lies with either party.  The fact that this case could not settle early on, while unfortunate, will not affect the scope of the fees and costs awarded.

A.    **Defendants' Specific Objections**

As an initial matter, defendants object to the fact that plaintiff is seeking compensation for more than 900 hours of legal time in a case that was resolved on summary judgment.  According to the defendants, defense counsel spent only 440.3 hours on the case.  See Defs. Mem. (Docket No. 174) at 6.  While the role of plaintiff's counsel and defense counsel are not necessarily the same, this court does find that the hours spent are disproportionate to other

civil rights cases, as discussed above, which were resolved after trial.  Before the overall

number of hours are addressed, however, this court will address the defendant's specific

challenges.

### 1.     Time Spent in Connection with the CERB Proceedings

The defendants challenge 22.75 hours of time spent by Mr. Stern meeting with union

attorneys, attending the CERB hearings, and continuing to discuss the case with the union

attorneys following the CERB decision.  Id. at 8 & n.6.  Mr. Stern contends that his active

participation in the CERB proceedings was necessary since Meagher was not named as a party

to those proceedings, although she could have been, and that Meagher "would have had no

input into and/or control over the proceedings without independent counsel directly

representing her interests being actively involved."  Pl. Reply Mem. (Docket No. 175) at 14-15.

He also contends that his presence at the hearings was necessary to enable him to assess the

witnesses, and to allegedly reduce the amount of time he would have to spend reviewing

transcripts.  Id. at 15.

This court finds that much of the time attributed to the CERB proceedings should be

eliminated.  The CERB proceedings were brought by the union against the Andover School

Committee.  Meagher was not a party to those proceedings, and any decision to assist in the

prosecution of that matter was voluntary.  Moreover, neither the Andover School Department,

nor Superintendent McGrath, defendants in the instant action, were parties to the CERB

proceedings and they should not be charged with paying plaintiff's counsel to voluntarily attend

these hearings.  Finally, from the time records submitted to this court it does not appear that

counsel's involvement in the CERB proceedings resulted in a significant time saving with respect

to the instant case.  See id. at 5, n.8 (justifying hours spent reviewing CERB findings, transcripts and documents in order to prepare for depositions in the instant case).

This court does recognize that some consultation with the union prosecuting the CERB matter would have been helpful in formulating the issues to be presented in this litigation. Therefore, this court will allow 3 hours of Mr. Stern's time at the rate of $450 per hour to be charged for this work.  This court will eliminate 15.35 hours at the rate of $450 per hour ($6,907.50), and 4.4 hours at the rate of $300 per hour ($1,320.00), for a total reduction of $8,227.50.

### 2.    Allegedly Unnecessary Motion Practice and Discovery-Related Activities

In addition to challenging specific motions, defendants challenge the number of motions that were filed in this case, as well as certain discovery that was pursued by the plaintiff.  See Defs. Mem. (Docket No. 174) at 6-7.  See also Stern Aff. (Docket No. 169-2) ¶ 44, and Addendum to the Affidavit of Mark D. Stern (Docket No. 169 (itemizing motions filed and rulings thereon)).  For his part, Mr. Stern places the blame for the large number of motions on the defendants' failure to cooperate.  While there is enough blame to go around in this case,[6] this court does find that that Mr. Stern's approach to litigation, which his supporters have characterized as "tenacious", resulted in an excessive number of motions being filed.  See Klickstein Aff. (Docket No. 169-8) ¶ 4.  These will be discussed infra.  First, however, the court will address the specific motions which defendants have challenged.

---

[6] Perhaps in an effort to keep costs down, defendants refused to produce discovery they felt was unnecessary, and, in some instances, did not engage in substantive negotiations.  This resulted in the filing of a number of motions by the plaintiff which ended up being easily resolved in court.

**<u>Motion for Costs In Connection With Service of Complaint</u>**

On August 14, 2013, Meagher filed a "Motion for Further Order Requiring Payment of Cost of Service and Attorney's Fees for the Cost of Filing This Motion" (Docket No. 19) on the grounds that defendants' counsel had refused to accept service, resulting in the need for motion practice.  The motion was opposed on the merits and the defendants challenged the veracity of representations made to the court about counsels' communications. (<u>See</u> Docket No. 22).  The motion was denied without prejudice on December 4, 2013 (Docket No. 40).  The defendants are seeking to strike 3.25 hours of Mr. Stern's time (at the Associate rate) affiliated with this motion.  This court agrees that the time should be stricken.  In particular, this court finds that the challenged time was unnecessary since service could have been consummated by agreement.

Some details regarding this motion will be provided because it is indicative of the way this case proceeded.  In connection with the service of the Complaint and Amended complaints the plaintiff filed a motion to appoint a special process server (Docket No. 8), and a "Motion for Appointment of Substitute Special Process Server" (Docket No. 12), which are not being challenged.  As noted above, plaintiff also filed a Motion for Fees and Costs on August 14, 2013 (Docket No. 19).  Therein, Mr. Stern represented that he had "expended 1.25 hours of legal services in the preparation of this motion at the rate of $600 per hour, an additional .5 paralegal time at the rate of $100 per hour to file the same, and his associate, a recent law school graduate, spent an addition (sic) .5 hours working on this motion at the rate of $200 per

hour." (Id. at 3).[7]  The defendants opposed the motion on August 27, 2013 (Docket No. 22),

plaintiff filed a "Motion for Leave to Respond to Defendant's Opposition to Plaintiff's Motion

for Costs of Service and to Agree in Part to Withdraw Some of the Relief Requested in his

Motion for Attorney's Fees" (Docket No. 23), defendants responded with a "Motion for Leave

to Respond to Plaintiff's Response to its Opposition to Plaintiff's Motion for Costs Relating to

Service" on August 29, 2013 (Docket No. 24), and on September 3, 2013 plaintiff filed a "Reply

to Defendant's Opposition to Plaintiff's Motion for Costs of Service and to Agree in Part to

Withdraw Some of the Relief Requested in his Motion for Attorney's Fees" (Docket No. 26).

Counsel prepared for oral argument, which was heard on December 4, 2013, at which time the

motion was denied.  All of this concerned the simple event of service of a complaint on known

and identifiable entities – a school system and its Superintendent.  This court will strike the 3.25

hours at the rate of $300 per hour for a total of $975.00.

## Motion for Issue Preclusion/Collateral Estoppel

It did appear to this court that, in light of the CERB proceedings, there should have been

a way for the parties to agree to a set of facts relevant to the instant case, and the court

requested that the parties address the relevance of the CERB proceedings to the instant case.

Unfortunately, the approach taken by the plaintiff resulted in the case becoming more

complicated, not less.

Specifically, on March 5, 2014, plaintiff filed a "Motion to Determine that the Issue

Determinations and Factual Findings of the Employment Relations Board in the Matter of the

---

[7] The court notes that these hourly rates do not match the rates presently being requested.

Termination of Jennifer Meagher are Binding on the Parties in this Action." (Docket No. 50).

Therein, plaintiff requested "that the issues determined and facts found in support of the issues

determined by the Commonwealth in its Employment Relations Board Decision of July 2, 2013

be determined to bind the parties and the court in the instant proceeding." (Id.). The CERB

opinion was issued in a proceeding between the union and the Andover School Committee, and

consisted of a 52 page decision filled with facts which had no relevance to the proceedings

before this court. (See Docket No. 50-2). The court's efforts to have the plaintiff focus on the

few facts relevant to the instant litigation were unsuccessful. The motion engendered the

following pleadings in addition to the moving documents and exhibits: "Defendants' Memoran-

dum of Law Regarding the Applicability of Issue Preclusion to the Parties and Legal Claims in this

Action" (Docket No. 53); "Plaintiff's Emergency Motion for Leave to File a Brief Memorandum

of Law in Response to Defendants' Opposition to Plaintiff's Motion to Determine that the Issue

Determinations and Factual Findings of the CERB Bind the Parties in this Action" (Docket No.

55); and plaintiff's "Reply Memorandum of Law in Response to Defendants' Opposition to

Plaintiff's Motion" (Docket Nos. 59 & 60). After hearing, the court denied the motion in an

opinion dated June 4, 2014. Therein, this court found that the motion was overly broad and

that the requirements for issue preclusion had not been satisfied because there was no identity

of parties or issues. (Docket No. 88). The plaintiff sought to renew her motion in connection

with her eventual motion for summary judgment (Docket No. 135). Her renewed motion was

denied, with the court ruling that the scope of the factual record would be decided in connec-

tion with the motion for summary judgment. (Docket No. 148). The defendant is seeking to

strike all the hours expended on these related motions. Defs. Mem. (Docket No. 174) at 9-10 &

n.9.  The court calculates the challenged amount as 20 hours at $450 per hour ($9,000), 1.3

hours at $300 per hour ($390), 4 hours at $175 ($700), and .5 hours at $80 per hour ($40), for a

total of $10,130.00.[8]

This court agrees that this time should be stricken.  While efforts to streamline the case

should have been undertaken, plaintiff's inability to separate out the critical facts resulted in a

great expenditure of unnecessary time.  There was no merit to requesting that the defendants

accept a slew of facts that were irrelevant to the present litigation, and the elements for issue

preclusion clearly were not met.  Therefore, this court will deduct the hours listed above and

$10,130.00 for this unsuccessful motion.

### Admissions

The plaintiff attempted to narrow the factual issues in dispute by serving requests for

admissions.  Again, however, the failure to isolate the few relevant facts resulted in a great deal

of unnecessary work, and the court was left to sift through much too much material in order to

resolve this case.

Specifically, the plaintiff originally proposed 443 separate admission requests.  The

defendants contended, appropriately, that this was overly burdensome.  The plaintiff then

reduced her request to approximately 270 separate requests for admission.  Again the

---

[8]  While the defendants have calculated this as 23.95 hours, this court's analysis is slightly different.  On March 5, 2014 (incorrectly listed as 3/5/15), Mr. Stern billed 4.2 hours, not 4.5 as defendants state, and some of that time was attributable to motions to compel discovery.  On the other hand, the defendants have not included time on March 18, 2014, at least some of which is attributable to the issue preclusion memorandum.  In addition, the entries of March 19th (1.05 and 1.55) relate to the issue preclusion memorandum.  The generalities of the entries make more precision impossible.  The calculations contained herein represent this court's best efforts.

defendant objected.  Eventually the matter was dropped.  The defendants are seeking to strike

25.05 hours of work done in connection with the admissions.  Id. at 10 & n.10.[9]

The plaintiff argues that the work done on admissions was necessary and practical

because many of the facts ended up being included in the court's decision on the cross-motions

for summary judgment.  This argument is unpersuasive.[10]  When faced with the voluminous

summary judgment record, the court developed as cohesive a presentation as possible.  As

noted in this court's decision on summary judgment, "the manner in which the evidence has

been presented needlessly complicates the case."  (Docket No. 150 at 4).  It would have further

delayed the opinion if the court had attempted to winnow down the facts even more.  Thus,

the reference to a fact in this court's summary judgment decision does not necessarily mean

that it was material or necessary to the court's decision.  Moreover, to the extent that counsel

expended time in preparing the motion for summary judgment, he has been credited with that

time as detailed below.

This court finds that some time spent organizing the facts for requests for admissions

was appropriate, even if the endeavor was eventually dropped, because it was appropriate to

attempt to limit the factual record in this case.  Therefore, this court will allow 5 hours of Ms.

Lee's time on this effort.  However, the court will strike the remaining time, calculated as 1.65

---

[9]  Although the defendants refer to 25.5 hours, the cited entries total 25.05.

[10]  The plaintiff argues that "[b]y Meagher's Counsel's count, these factual findings [in the summary judgment decision] included approximately one hundred and thirty three facts that the Court determined were material and undisputed, as set out in the first twenty-four pages of the Court's fifty-two page summary judgment decision....  Approximately forty-five additional findings were made by the Court in the remainder of the Decision."  Pl. Reply Mem. (Docket No. 175) at 3.

hours at $450 per hour ($742.50), 8.85 hours at $300 per hour ($2,655.00), and 9.55 hours at

$175 per hour ($1,671.25), for a total of $5,068.75.

### Motions in Limine

The defendants are seeking to strike 15.2 hours of time in connection with what they

contend were unnecessary motions in limine filed prior to the motions for summary judgment.

Defs. Mem. (Docket No. 174) at 10-11 & n.11.[11]  Although the time records seem to indicate

multiple motions in limine were completed at that time, the docket reflects that only one

motion in limine was filed, and that was a motion to preclude the admission of testimony

relating to conversations beyond that to which parties had testified at deposition.  (Docket No.

95).  The motion was denied.  (Docket No. 101).  The court agrees that this motion was

premature and unnecessary.  Accordingly, the court will strike 3.65 hours at $450 per hour

($1,642.50), 7.8 hours at $300 per hour ($2,340), and 1.15 hours at $80 per hour ($92), for a

total of $4,074.50.

### Interim Award of Fees

On April 21, 2015, plaintiff filed a "Motion for Leave to File an Application for an Interim

Award of Attorney's Fees and Costs."  (Docket No. 158).  The defendants opposed the motion,

and this court denied the motion on April 23, 2015 on the grounds that there were no excep-

tional circumstances warranting the award of attorneys' fees during the pendency of the

litigation.  (Docket No. 161 and cases cited).  The defendants request that the 7.45 hours

---

[11]  It seems that the referenced entry of 4/3/14 for 2.6 hours should be to 4/3/15.  However, that work
was performed after the motion for summary judgment, so the time is not included in this court's
description of the defendants' challenge to the allegedly unnecessary motions in limine.

associated with this motion be stricken.  Defs. Mem. (Docket No. 174) at 11 & n.12.  This court

agrees that the time was unnecessary, and will strike 7.45 hours at $300 per hour for a total of

$2,235.00.

## Second Motion for Summary Judgment

On April 30, 2015, the plaintiff filed a "Motion for Leave to File a Motion for Further

Relief in the Form of Partial Summary Judgment as it Relates to Defendants' Having Caused the

Plaintiff to Suffer Emotion Distress and to Incur Medical Expenses and Costs Including

Attorney's Fees." (Docket No. 163).  By this motion, the plaintiff was seeking a ruling as a

matter of law that the defendants were responsible for the severe emotional distress she had

allegedly suffered.  The defendants opposed the motion (Docket No. 165) and the motion was

denied by the court, which ruled that "[n]ot only is the motion untimely, but it is appropriate

for the jury to determine whether and, if so, the extent to which the defendants' conduct was

the proximate cause of damages the plaintiff allegedly sustained." (Docket No. 166).  The

defendants request that the 2.1 hours attributed to this motion be stricken.  Defs. Mem.

(Docket No. 174) at 11 & n.13.  The court will strike 2.1 hours at $300 per hour for a total of

$630.00.

## Meeting with Expert

Although not related to a specific motion, the defendants challenge 6.55 hours (3.4

hours at $450 per hour, 3.15 hours at $300 per hour), which plaintiff's counsel spent consulting

with an NEASC expert who was going to opine as to the significance of the vote Meagher was

writing to her colleagues about in the email that ultimately gave rise to this dispute.  See id. at

11-12 & n.14.  This court agrees with the defendants that it was unlikely that expert testimony

was necessary on this issue, or that it would be admissible.  Nevertheless, the issues had not

been finalized for trial at the time the case settled, and at this stage the court declines to rule

that it was unnecessary for the plaintiff to explore this testimony.  Therefore, the court will not

reduce these hours.

### Deposition Preparation

The defendants are also challenging the 31.8 hours spent preparing for three

depositions as excessive (consisting of 25.8 hours at $450 per hour and 6 hours at $300 per

hour).  While high, this court is not prepared to state that the time was so obviously

unreasonable that it should be stricken.  No reduction will be made for this preparation.

### Summary

In connection with the motions and discovery-related activities challenged as

unnecessary, the court will reduce the fees requested by $23,113.25 as detailed above.

### 3.    Cross-Motions for Summary Judgment

The defendants challenge the time spent on the cross-motions for summary judgment

as being excessive.  Using their best efforts to categorize the time spent in light of a lack of

specificity in the time sheets, the defendants calculated that plaintiff spent 102.4 hours drafting

a motion for summary judgment (including 44.25 hours at $450 per hour, 24.95 hours at $300

per hour and 33.2 hours at $175 per hour), 97.35 hours drafting an opposition to defendants'

motion (35.45 hours at $450 per hour, 25.55 hours at $300 per hour and 36.35 hours at $175

per hour), 49.55 hours on a reply memorandum (14.65 hours at $450 per hour, 22.20 hours at

$300 per hour and 12.7 hours at $175 per hour), and 30.1 hours preparing for oral argument

and hearing (not counting attendance at the hearing) (22 hours at $450 per hour, 6 hours at

$300 per hour and 2.1 hours at $175 per hour).  Id. at 13-14 & nn.17-20.  Thus, under the rates established by this court, the plaintiff is seeking $90,728.75 in connection with the summary judgment motions.

On summary judgment, the plaintiff prevailed on her claim that she suffered retaliation for protected speech in violation of her rights under the First Amendment.  The court found, however, that Superintendent McGrath was entitled to qualified immunity, and that the plaintiff had failed to establish a claim for a violation of the MCRA.  The court also declined the plaintiff's request to certify a question of municipal liability under the MCRA to the Massachusetts Supreme Judicial Court, finding that the law was well established that a municipality was not a "person" for purposes of the MCRA.  (Docket No. 150).  The claims on which the plaintiff did not prevail involved distinct legal principles, and the time spent on these claims should be deducted from the total.  See Parker v. Town of Swansea, 310 F. Supp. 2d at 394 (where plaintiff succeeds on only some claims, "the key issue is the relationship between the successful and unsuccessful claims."  Where unsuccessful claims are based on different facts or unrelated legal theories, hours spent on such claims will not be compensable), and cases cited.

Similarly, the court finds that there were excessive motions filed in connection with establishing the record for the summary judgment motions.  Thus, in addition to Plaintiff's Statement of Material Facts (Docket No. 116-1), Defendants' Response to Plaintiff's Statement of Material Facts (Docket No. 131); Defendants' Concise Statement of Undisputed Material Facts (Docket No. 124), and plaintiff's response to Defendant's Statement of Undisputed Material Facts (Docket No. 132-2), plaintiff filed a number of unnecessary motions.  These included plaintiff's "Renewed Motion to Determine that the Issue Determinations and Factual

Findings of the Employment Relations Board in the Matter of the Termination of Jennifer Meagher are Binding on the Parties in this Action" (Docket No. 135)[12] (denied by Docket No. 148); "Plaintiff Meagher's Rule 56(d)(1) Request for Determination of Facts Not Genuinely at Issue, and, Therefore, Established" (Docket No. 136) (denied by Docket No. 149); and "Plaintiff Meagher's Supplemental Rule 56(d)(1) Request for Determination of Facts Not Genuinely at Issue, and, Therefore, Established" (Docket No. 138) (denied by Docket No. 149).  Similarly, after briefing on summary judgment, plaintiff filed a "Motion to Bring Additional Precedent to the Attention of the Court in Support of Her Motion and in Opposition to Defendants' Motions for [Partial] Summary Judgment" in which counsel sought to bring the court's attention to a 1998 Supreme Court case.  (Docket No. 146).  While the motion was allowed (Docket No. 151), there was no reason why this long existing case was not included in the original briefing.

This court is unable to determine from the time sheets how much time was specifically attributable to the issues on which the plaintiff did not prevail, or to these unnecessary motions.  See Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir. 2008) (court may discount or disallow hours where time records are "too generic" and "insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like.").  In any event, using the court's best judgment, the fees charged in connection with the motions for summary judgment shall be reduced by approximately one-third, i.e., by $30,243.00.  This reflects the fact that the plaintiff did not prevail on all the issues raised, that the issues on which she did not prevail raised distinct legal principles which can be separated out from the

---

[12]  This motion was discussed above, and the time relating thereto has already been stricken in connection with the issue preclusion motions.

remaining issues addressed on summary judgment, and that excessive motions were filed.

Moreover this court finds that excessive time was spent on the cross-motions for summary

judgment.  The plaintiff's motion and the defendants' motion raised virtually the same issues.

Therefore, it should not have taken the same amount of time to prepare the moving papers as

the opposing papers, nor was an extensive reply memorandum necessary.  Finally, this court

finds that 30 hours of preparation time for oral argument on the motion for summary judgment

is excessive.  In this court's view, not only is the one-third reduction fair, but compensating

plaintiff $60,486.00 for the summary judgment motions is also fair to the plaintiff.

### 4.    Core vs. Non-Core Work

The defendants object to plaintiff's counsel's designation of some work as "core" work

which, in defendants' view, should be designated as "non-core" work and billed at a lower rate.

In particular, but without limitation, the defendants contend that discovery, consultations with

third parties, general research and conversations with the plaintiff were improperly

characterized as core work.  Defs. Mem. (Docket No. 174) at 14-15.  Plaintiff contends in

response, however, that defendants' designations are improper, noting that legal research in

particular has been designated as core work in the case law.  Pl. Reply Mem. (Docket No. 175)

at 18 (citing Alfonso v. Aufiero, 66 F. Supp. 2d at 196).  See also Matalon v. Hynnes, 806 F.3d at

638 (court has at times approved "fee awards that set two separate hourly rates for a particular

attorney – one for 'core' tasks like 'legal research, writing of legal documents, court

appearances, negotiations with opposing counsel, monitoring, and implementation of court

orders' and a lower one for 'non-core' tasks, which are 'less demanding,' such as 'letter writing

and telephone conversations.'" (citation omitted)).

The core/non-core distinction is one of the options available to the court in assessing legal fees.  However, it is not mandatory.  Id. at 639.  In the instant case, Mr. Stern has made a good faith effort to distinguish between work that should be billed at a higher/partner rate, and work that should be billed at an associate or paralegal rate.  Further efforts to characterize counsel's work as "core" or "non-core" is not necessary.  While this court finds that excessive time has been spent on this case, the distinction between the types of work performed is not the critical issue.  Therefore, this court declines the defendants' suggestion that the court "scrutinize" the time records and "redesignate" the time between core and non-core work. Defs. Mem. at 15.

B.    **Overall Assessment of Time Expended**

In connection with the above analysis the court has, to the best of its calculations, addressed approximately 417 hours of time,[13] and has authorized fees in the amount of $78,596.00.[14]  Deducting the hours already addressed above from the hours for which compensation is being sought in the fee petition leaves approximately 564 hours, valued at $177,716.35.  This is calculated as follows:

|  | Hours Remaining | Hourly Rate | Fee Request |
|---|---|---|---|
| Stern as partner | 185.15 | $450 | $ 83,317.50 |
| Stern as associate | 271.6 | $300 | $ 81,480.00 |
| Lee as associate | 45.95 | $175 | $ 8,041.25 |
| Paralegal | 60.97 | $ 80 | $ 4,877.60 |
|  | 563.67 |  | $177,716.35 |

---

[13]  The hours addressed include 189.2 hours at $450 per hour, 123 hours at $300 per hour, 102.9 hours at $175 per hour and 1.65 hours at $80 per hour.

[14]  The authorized fees include $1,350 (CERB), $875 (Admissions), $60,486.00 (summary judgment), $13,410 (deposition preparation), $2,475 (meeting with experts).

After careful consideration of the entire record, this court finds that a 50% across the board reduction of this amount is appropriate.  See Matalon v. Hynnes, 806 F.3d at 639 (approving an across-the-board rate cut).  Thus, counsel will be awarded $88,858.18 for the remaining work.  This, combined with the previously awarded fees ($78,596.00), results in a total fee award of $167,454.18.

The major reasons for this across-the-board reduction are as follows:

First, a review of the time records reveals that Mr. Stern had very frequent communications with his client.  While there is no question that some communication is appropriate, this virtual daily contact should not be paid for by the defendants.

Second, a review of the time records indicates that the time could have been spent more efficiently.  Small charges were incurred on virtually a daily basis, with very few periods of significant time being spent on any given day.  Given the large number of filings in this case, the fact that work was done on such a piece-meal basis appears to have contributed to the excessive numbers of hours spent on this matter.

Third, the docket indicates a great deal of repetitive work.  For example, there were a significant number of motions to amend or correct pleadings.  (See, e.g., Docket No. 29 ("Motion to Amend the Complaint Assented to by Defendants' Counsel" to correct typographical errors); Docket No. 70 (Corrected Motion to Compel); Docket No. 129 ("Plaintiff's Motion to Amend the Name of One Defendant"); Docket No. 153 (Corrected Second Amended Complaint); Docket No. 154 (Third Amended Complaint)).  Similarly, there were a number of motions which were refiled or supplemented on a number of occasions.  (See, e.g., Docket No. 62 ("Emergency Motion for Issuance of a Supplemental Order Regarding Confidentiality");

Docket No. 63 ("Emergency Motion for Issuance of a Supplemental Order Regarding Confiden-

tiality"); Docket No. 65 ("Revised Motion for Issuance of a Supplemental Order Regarding

Confidentiality"); Docket No. 73 ("Third Revised and Assented to Motion for Issuance of a

Supplemental Order Regarding Confidentiality"); Docket No. 112 ("Motion for Reconsideration

of Order Limiting a Memorandum to No More Than Thirty Five Pages")).  Plaintiff's counsel also

filed a number of "emergency" motions which were not true emergencies, and could have been

dealt with at regularly scheduled hearings.  (See, e.g., Docket No. 41 ("Emergency Motion to Set

Briefing Schedule on Issue Preclusion"); Docket No. 55 ("Plaintiff's Emergency Motion for Leave

to File a Brief Memorandum of Law in Response to Defendants' Opposition to Plaintiff's Motion

to Determine that the Issue Determinations and Factual Findings of the CERB Bind the Parties in

This Action"); Docket No. 63 ("Emergency Motion for Issuance of a Supplemental Order

Regarding Confidentiality"); Docket No. 157 ("Emergency Motion for Sanctions and Other

Relief")).  Finally, as noted above, there were a number of supplemental pleadings bringing the

court's attention to information that could have been included in the moving papers.  While

there may be an explanation for each of these motions, and Mr. Stern may not have elected to

charge in full for all of them, they indicate an inefficient use of time.  Since the defendants have

already had to spend excessive time responding to these pleadings, they should not be charged

again.

Fourth, the reduction in time is also appropriate in light of time spent for work that is

not properly chargeable to the defendants.  For example, there are communications with a jury

selection specialist (5/13/15), "miscellaneous tasks" (5/18/15), emails seeking an intern

(4/25/15), and discussions with 12 attorneys regarding jury selection.  (4/16/15).  This court

declines to do an item by item review of the time sheets beyond that which has already been done.  An across-the-board reduction in fees is appropriate, especially in light of the very general descriptions in the time sheets.

This court notes that the across the board reduction does not include the major work in this case, i.e., the motions for summary judgment for which the court allowed a higher percentage of the hours billed.  This court has not reduced the fees on the basis of the number of discovery disputes.  As a general statement, plaintiff filed motions too quickly, and the defendants were too slow to respond with requested discovery.  Neither side will be penalized for this difference in style.  Nor has this court considered the size of the award to the plaintiff.  Her constitutional rights were violated, and a reasonable award of fees is appropriate without any further modification to the lodestar analysis.  See Carpaneda v. Domino's Pizza, Inc., 89 F. Supp. 3d 219, 229-30 (D. Mass. 2015) (discussing basis for further adjustment of lodestar amount).

Finally, this court finds that the fees, as awarded, are in line with other cases.  As noted above, counsel have recovered comparable fees after multi-day trials.

### C.    Costs

The plaintiff is seeking $16,237.79 in costs.  (Docket No. 175-5).  The only cost to which the defendants object is the $800 fee to the NEASC expert.  Since this court has already ruled that consultation with this expert was not unreasonable, this amount will not be deducted.  The costs, as requested, will be awarded in full.

**<u>CONCLUSION</u>**

For all the reasons detailed herein, "Plaintiffs' Amended Motion to Assess Costs Including Reasonable Attorney's Fees" (Docket No. 175-5) is ALLOWED IN PART AND DENIED IN PART.  Plaintiff is awarded $167,454.18 in fees, and $16,237.79 in costs, for a total award of $183,691.97.  Plaintiff's "Motion to Submit Additional Materials to the Court" (Docket No. 179) is DENIED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge